Catherine Cabalo (Cal Bar No. 248198)
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
Email: ccabalo@peifferwolf.com

*Attorneys for Plaintiffs*
*Abdul Nevarez and Priscilla Nevarez*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; TORREY PINES CLUB CORPORATION; THE LODGE AT TORREY PINES PARTNERSHIP, L.P.; EVANS HOTELS, LLC; AND DOES 1-10;<br><br>Defendants. | Case No.   **'23CV0484 AJB  WVG**<br><u>Civil Rights</u><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>1.  Violations of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*)<br>2.  Violations of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*)<br>3.  Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br>4.  Violation of California Government Code Section 11135<br>5.  Violations of the California Unruh Act (Cal. Civil Code § 51 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Abdul Nevarez and Priscilla Nevarez (together "Plaintiffs") on behalf of themselves and all other similarly situated disabled persons in this civil rights action, and hereby complain of defendants City of San Diego; Torrey Pines Club Corporation; The Lodge at Torrey Pines Partnership, L.P.; and Evans Hotels, LLC (together "Defendants") as follows:

//

**INTRODUCTION**

1. This is a civil rights action involving the lack of disabled access to the golf programs, golf courses, and related restaurants owned, operated, and/or leased by Defendants City of San Diego (the "City"); Torrey Pines Club Corporation ("TP Club"); The Lodge at Torrey Pines Partnership, L.P. ("TLTP Partnership"); and Evans Hotels, LLC ("Evans Hotels"); including but not limited to the lack of disabled access to the buildings, structures, facilities, complexes, properties, land, developments, and/or surrounding business complexes known as "Torrey Pines Golf Course," ("Torrey Pines") and The Grill at Torrey Pines ("The Grill"), which is the restaurant that serves Torrey Pines located in The Lodge at Torrey Pines ("The Lodge"). Torrey Pines, The Grill, and The Lodge are located at or about 11480 N. Torrey Pines Road, La Jolla, CA 92037.

2. Plaintiff Abdul Nevarez (sometimes "Mr. Nevarez") is physically disabled and requires the use of a wheelchair. Mr. Nevarez was an avid golfer prior to the injury that rendered him disabled. He has continued golfing to remain physically active after his injury, as it is one of the only recreational physical activities that he is able to enjoy regularly with his family and friends.

3. Plaintiff Priscilla Nevarez (sometimes "Ms. Nevarez") is Mr. Nevarez's wife. She accompanies Mr. Nevarez golfing and often assists with making arrangements for them to golf.

4. At all times relevant herein and continuing, Plaintiffs were denied equal protection of the law and were denied civil rights under state and federal law. As set forth in detail herein, Plaintiffs were denied rights to "full and equal" access at Torrey Pines, at The Grill, and to the benefits of "programs, services and activities" offered by the City because the City's programs, services, and activities at Torrey Pines were not "accessible to and useable by" persons with disabilities, such as Mr. Nevarez, who requires use of accessible facilities. The denial continued despite the City and its contractors having actual notice of the inaccessible conditions, demonstrating its deliberate indifference and/or intentional discrimination toward Plaintiffs. Plaintiffs seek injunctive relief to require Defendants to make Torrey Pines and The Grill accessible to disabled persons and to ensure that the "programs, services and activities" offered by the City and all related public accommodations be provided in a non-discriminatory manner to mobility disabled persons, including but not limited to removing all architectural and policy barriers at Torrey Pines and The Grill.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 USC §§ 12101 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, ("Rehab Act"). Pursuant to supplemental jurisdiction, attendant and related causes of action arising from the same facts are also brought under the Unruh Civil Rights Act, California Civil Code §§ 51, 52 ("Unruh Act") and California Government Code Section 11135 ("Section 11135").

6.      Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this District and that Plaintiffs' causes of action arose in this District.

7.      This case should be assigned to the San Diego Division of the Southern District of California, as the real property which is the subject of this action is located in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

**PARTIES**

8.      At all times relevant to this Complaint, Mr. Nevarez is qualified as a "physically disabled person" and a "person with a disability," within the meaning of the ADA, Rehab Act, and Unruh Act. Mr. Nevarez's right leg is amputated above the knee, and he has significant nerve damage in his left leg and left arm. He requires use of a wheelchair for mobility. He possesses a disabled parking placard and/or license plate issued by the State of California, entitling him to park in designated accessible and van-accessible parking spaces.

9.      Plaintiff Priscilla Nevarez does not have a disability, but she assisted Mr. Nevarez with and accompanied him to all the events described in this Complaint. Priscilla and Abdul are married.

10.     The City is a public entity subject to Title II of the ADA, the Rehab Act, and to all other legal requirements referred to in this Complaint, who is the owner, operator, lessor, and/or lessee of Torrey Pines and/or the real property on which Torrey Pines sit. Upon information and belief, the City also is an owner, operator, lessor, and/or lessee of The Grill and/or the real property on which The Grill sits.

11.     TP Club is an owner, operator, lessor, and/or lessee of Torrey Pines. Upon information and belief, TP Club is an agent of the City and is in some manner legally responsible for the events and happenings herein referred to as they relate to Torrey Pines, which caused injury and damages to Plaintiffs as herein alleged.

12.     Upon information and belief, TLTP Partnership is an owner, operator, lessor, and/or lessee of The Lodge and all its amenities that also serve Torrey Pines, including The Grill. Upon information and belief, TLTP Partnership is an agent of the City and is in some manner legally responsible for the events and happenings herein referred to as they relate to The Lodge and The Grill, which caused injury and damages to Plaintiffs as herein alleged.

13.     Upon information and belief, Evans Hotels is an owner, operator, lessor, and/or lessee of The Lodge and all its amenities that also serve Torrey Pines, including The Grill. Upon information and belief, Evans Hotels is an agent of the City and is in some manner legally responsible for the events and happenings herein referred to as they relate to The Lodge and The Grill, which caused injury and damages to Plaintiffs as herein alleged.

14.     Plaintiffs do not know the relative responsibilities of the City, TP Club, TLTP Partnership, and Evans Hotels in the ownership and operation of the facilities herein complained of, but is informed and believes, and on such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other defendants in proximately causing the damages complained of herein. All actions alleged herein were done with the knowledge, consent approval and ratification of each of the Defendants herein, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

15.     Mr. Nevarez is a disabled person resulting from physical injuries he suffered because of a hit-and-run accident. He uses a manual wheelchair for mobility. Mr. Nevarez relies on municipal

"programs, services and activities" and on businesses and other public places to be accessible to mobility disabled individuals like himself so that he can live his life independently.

16.     Mr. and Ms. Nevarez share a love of golf and travel everywhere they can to enjoy different golf courses in different areas. Although Ms. Nevarez is not disabled, she assists Mr. Nevarez when they golf and travel. She is forced to navigate access barriers for Mr. Nevarez when a program, service, activity, or public accommodation is inaccessible to Mr. Nevarez.

17.     Torrey Pines and the golf program available there are a "program, service, or activity" of the City, subject to the requirements of Title II of the ADA.

18.     The Lodge and The Grill are places of "public accommodation" and "business establishment" subject to the requirements of 42 USC sections 12181(7)(A), (B), & (L) of the ADA and of California Civil Code sections 51 *et seq*.

19.     Defendants have discriminated against Plaintiffs because the facilities and policies at Torrey Pines and The Grill do not comply with the requirements of Titles II and III of the ADA, the Rehab Act, Section 11135, and the Unruh Act. Defendants have failed and refused to provide full and equal access to the services, privileges, benefits, and advantages that they provide to nondisabled persons at Torrey Pines and The Grill.

20.     Defendants have discriminated against Plaintiffs by failing to remove numerous architectural barriers that prevent wheelchair users from golfing at Torrey Pines and utilizing the services offered in the buildings related to Torrey Pines and The Grill.

21.     Defendants have also discriminated against Plaintiffs by failing to abide by applicable federal and state access standards in constructing and/or altering facilities at Torrey Pines and The Grill.

22.     Defendants failed to make reasonable accommodations for Mr. Nevarez, even though doing so is feasible and readily achievable given Defendants' resources, and Defendants cannot demonstrate that making the requested accommodations would fundamentally alter the nature of the services, programs, activities, or public accommodations offered at Torrey Pines or The Grill.

23.     Defendants have knowingly and intentionally denied persons with mobility disabilities the full and equal enjoyment of their businesses, services, privileges, advantages, and accommodations.

Defendants have engaged in this discriminatory conduct despite the fact that their services, business practices, contracts, and contractual relationships could easily be brought into compliance with the ADA, Rehab Act, Section 11135, and the Unruh Act, and despite the fact that Defendants are and have been fully aware that their acts, omissions, and business practices have and continue to cause harm to persons with mobility disabilities including segregation and exclusion. The foregoing violations of the ADA, Rehab Act, Section 11135, and the Unruh Act are illustrated by the experiences of Plaintiffs, which are set forth in the paragraphs below.

24.     Plaintiffs have attempted to visit Torrey Pines as paying customers multiple times since March 2021, and they encountered barriers (both physical and intangible) that interfered with, if not outright denied, their ability to use and enjoy the goods, services, privileges and accommodations offered at Torrey Pines and The Grill, including without limitation: parking, path of travel from parking to related buildings, Pro Shop, and accessible seating.

25.     Because Mr. Nevarez has struggled with numerous barriers when he has visited Torrey Pines and The Grill, Ms. Nevarez has been forced to assist Mr. Nevarez on each of their visits and has independently suffered injuries as a result of her association with Mr. Nevarez.

26.     On March 2, 2021, Plaintiffs attempted to book a tee time for Torrey Pines. Plaintiffs called Torrey Pines to request an adaptive golf cart for Mr. Nevarez. Plaintiffs asked if Torrey Pines had a ParaGolfer, a specific model of adaptive golf cart that is accessible to golfers with varying kinds of disabilities and safest to operate on a golf course. The Torrey Pines employee they spoke with, "Larry," advised Plaintiffs that Torrey Pines did not have a ParaGolfer and could not accommodate Mr. Nevarez. Plaintiffs told Larry they would not be able to complete their tee time reservation without access to a safe and accessible adaptive golf cart. They asked Larry to get back to them as soon as possible regarding when Torrey Pines would be able to accommodate Mr. Nevarez.

27.     That same day, Plaintiffs received an email response from the "San Diego City Golf Division" ("SD Golf Division"), offering use of a "Solo Rider" adaptive golf cart to Mr. Nevarez.

28.     Plaintiffs responded via email the next day (March 3, 2021) that the Solo Rider is not an accessible cart, is difficult for even non-disabled people to maneuver, and poses a tipping hazard, which Mr. Nevarez personally encountered while attempting to use a Solo Rider in the past. Plaintiffs also

explained why a ParaGolfer is safe and fully accessible. Plaintiffs again requested a ParaGolfer to allow Mr. Nevarez to access Torrey Pines and other municipal golf courses in the City.

29.     On March 8, 2021, Plaintiffs emailed the SD Golf Division after receiving no response to their March 3, 2021 email. Plaintiffs asked for a response to their request for a ParaGolfer so that Mr. Nevarez could access Torrey Pines.

30.     On March 9, 2021, Plaintiffs received an email response from John Howard, Assistant Deputy Director of the City of San Diego Parks and Recreation. Mr. Howard's email described Plaintiffs' request for a ParaGolfer as a "preference" for a model of golf cart different from the Solo Rider. He explained that Torrey Pines is managed by a third-party lessee, that he is consulting with their "management team" to get a better understanding of the adaptive golf cart options, and that they would follow up once they gathered all necessary information. Upon information and belief, this "management team" is TP Club.

31.     Plaintiffs responded to Mr. Howard via email on March 10, 2022, explaining that their request for a ParaGolfer is not a preference, but is a request for a safe and fully accessible adaptive golf cart for Mr. Nevarez and other disabled golfers like him. Plaintiffs explained again why the Solo Rider is not accessible and is a dangerous tipping hazard. They also confirmed again that they would love to golf at Torrey Pines but cannot do so without a safe and accessible adaptive cart for Mr. Nevarez. They reiterated their request for a ParaGolfer and asked Mr. Howard to respond.

32.     Mr. Howard replied the same day: "We'll be sure to get back to you on your request."

33.     After almost a month of no response from Mr. Howard, Plaintiffs emailed him on April 4, 2021 to follow up on their request.

34.     Mr. Howard responded the next day (April 5, 2021) that he reached out to the distributor of the ParaGolfer in San Diego County and requested a demonstration of the cart to get a better understanding of how it functions on the golf course. He noted that he hoped they would be able to schedule the demonstration soon so that they could better assist the Plaintiffs with their request. Plaintiffs were confused by the need for a demonstration of the ParaGolfer, because they understood that Torrey Pines housed a ParaGolfer in the past for use at golf events for disabled veterans.

35.     Mr. Howard did not respond to Plaintiffs despite their several attempts to request a status update on their request for a ParaGolfer to access Torrey Pines and other City golf courses.

36.     Upon information and belief, Mr., Howard never followed up with the distributor of the ParaGolfer to set up a demonstration.

37.     In December 2021, Plaintiffs' friend told them he wanted to play Torrey Pines for his birthday in March, so Plaintiffs and their friends planned a golf trip to Torrey Pines to celebrate their friend's birthday. On December 24, 2021, Plaintiffs booked and paid for a tee time for four players to golf at Torrey Pines on March 20, 2022 at 11:21 am.

38.     Since Mr. Howard never responded to Plaintiffs about their request for a ParaGolfer, had to travel with one for this special trip and to drive it down to Torrey Pines. With much difficulty and discomfort, Plaintiffs negotiated space in their vehicle for themselves and their son, and to pack up the ParaGolfer, Mr. Nevarez's mobility assistive devices, and their gear. They paid extra to stay at a hotel with a valet and secure parking to ensure the ParaGolfer would be safe during transport.

39.     Plaintiffs emailed Mr. Howard on March 10, 2022 to alert him of their March 20th tee time and to request that they be able to park the ParaGolfer in Torrey Pines' cart barn the night before.

40.     To their extreme dismay, Mr. Howard responded the same day that the ParaGolfer was not an "approved vehicle" for use on the greens or at Torrey Pines generally. He noted that he tried "on numerous occasions to coordinate a demo with the Paragolfer distributor, but was unsuccessful in doing so do [sic] to their lack of availability."

41.     Plaintiffs were humiliated, embarrassed, anxious, and angry that they City continued to deny them access to Torrey Pines, even after they had gone through much trouble and expense to source and transport a ParaGolfer to create the required access that the City failed to provide at Torrey Pines or at any of its golf courses.

42.     Plaintiffs responded to Mr. Howard on March 10, 2022 to contest him refusing Mr. Nevarez access to Torrey Pines and to assert that Mr. Nevarez has used the ParaGolfer with no issues on golf courses all over the world, that the ParaGolfer has been used at Torrey Pines before, and that they believed Mr. Howard had not actually followed up with the distributor for the ParaGolfer to set up a demonstration. They reminded Mr. Howard that they went through great lengths and difficulty to

bring their own ParaGolfer down because Torrey Pines is not accessible. They asked Mr. Howard to confirm whether he would allow Mr. Nevarez to play on his own ParaGolfer or if Mr. Howard intended to continue to deny Mr. Nevarez access to Torrey Pines.

43.     Plaintiffs sent another email to Mr. Howard on March 10, 2022 explaining that their friends' travel arrangements would be affected by Torrey Pines denying access to Mr. Nevarez, that it is extremely embarrassing and humiliating to be denied access to Torrey Pines because Mr. Nevarez is disabled and needs an accessible adaptive golf cart, that the City failed to provide an accessible adaptive golf cart in over a year since Plaintiffs first requested one, that Torrey Pines has held events with the ParaGolfer and housed one for use at the course before, and that Plaintiffs' trip would be ruined if they were denied access to Torrey Pines. Plaintiffs asked Mr. Howard to confirm by the next morning whether they would be allowed to play at Torrey Pines or if the City would continue to discriminate against Mr. Nevarez.

44.     Plaintiffs did not receive a response from Mr. Howard the next morning (March 11, 2022). They sent Mr. Howard an email mid-morning that day, again asking him to confirm what the City was going to do so that they and their party could cancel their trip if Torrey Pines and the City decided to continue to deny Mr. Nevarez access to the course.

45.     Mr. Howard finally responded midday on March 11, 2022 that "we had to learn more about the product before we could make a determination about its use" since they had not seen the ParaGolfer in action before. He confirmed that he spoke with the distributor of the ParaGolfer and received information confirming that the ParaGolfer was safe to use on the greens. He agreed to allow Plaintiffs to store the cart in the cart barn the night before their tee time and apologized for the distress he caused them and their friends as they "learned more about this product." Mr. Howard did not explain why he and the City waited over a year since Plaintiffs' first request for a ParaGolfer to learn more about it and how it works on a course.

46.     On March 19, 2022, Plaintiffs drove from their home in the Bay Area to Torrey Pines to drop off the ParaGolfer. When they arrived at Torrey Pines, they parked in a designated accessible parking stall. However, the process of unloading the ParaGolfer was dangerous, as they were in a busy parking lot with vehicles entering and exiting and not a lot of space to unload safely.

47.     Once they finally unloaded and parked the ParaGolfer in the cart barn, they attempted to dine at The Grill. The staff at The Grill told Plaintiffs they could not accommodate them inside without a reservation but told them they could dine outside. However, the outdoor seating was not accessible to Mr. Nevarez. Plaintiffs were unable to dine at The Grill at that time. Ms. Nevarez was forced to assist Mr. Nevarez and their party to find accessible dining elsewhere, but she was unsuccessful. They ultimately returned to The Grill, where they were seated inside. The experience was frustrating and exhausting for Plaintiffs, who just wanted to eat at The Grill after a long day of driving to Torrey Pines.

48.     Upon information and belief, seating inside the restaurant, bar seating, and restrooms that serve The Grill are also not accessible to mobility-disabled patrons.

49.     On March 20, 2022, the day of their tee time, Plaintiffs went to Torrey Pines early to have breakfast with their friends and to look around at the Pro Shop. Mr. Nevarez experienced difficulty maneuvering in the Pro Shop, because merchandise racks were situated too close to each other and did not allow him adequate space. Also, the checkout counter at the Pro Shop was too high for Mr. Nevarez to pay for his merchandise on his own. Embarrassed and humiliated again by the lack of access, Ms. Nevarez was forced to pay for Mr. Nevarez's merchandise.

50.     Plaintiffs and their son went to Torrey Pines' cart barn to get ready for the tee time, and Claimant's son got the ParaGolfer out of the cart barn for Mr. Nevarez. One of the employees watching Mr. Nevarez load up on the ParaGolfer asked Plaintiffs, "are you allowed to use that?" Plaintiffs were embarrassed by the employee's question that singled Mr. Nevarez out for his disability and demonstrated the insensitivity of Torrey Pines' staff to people with disabilities.

51.     During their round of golf, Mr. Nevarez hit a hole-in-one at Torrey Pines' iconic 15th hole on the north course. This joyous event was tainted by the fact that Mr. Nevarez could not independently report the hole-in-one to staff at the Pro Shop without difficulty, because, as noted above, the Pro Shop counter was too high for Mr. Nevarez to access. Plaintiffs were also unable to enjoy traditional drinks at the bar to celebrate Mr. Nevarez's hole-in-one because they needed to load the ParaGolfer back into their truck, which Ms. Nevarez had parked in the back corner of the parking lot to avoid traffic. However, Plaintiffs and their son still experienced the same dangerous conditions loading in the drive path of the parking lot. Fearful that the ParaGolfer would be open to theft if left

unattended, they did not return to the bar for drinks and went to a restaurant with a valet and secure parking instead before returning to their hotel.

52.     Mr. Nevarez's hole-in-one went "viral" on social media. When commenters and friends asked about how Plaintiffs celebrated at the bar, Plaintiffs were embarrassed to explain that they could not celebrate because they needed to tend to the ParaGolfer that they brought down because the City did not have a safe and accessible adaptive golf cart of its own. As noted above, upon information and belief, Plaintiffs would not have been able to enjoy drinks at the bar, which is not accessible to wheelchair users like Mr. Nevarez.

53.     On April 5, 2022, Plaintiffs emailed Mr. Howard to express their frustration and anger with their experience at Torrey Pines and the events leading up to their tee time.

54.     Mr. Howard responded via email the same day that the City has been working with "Therapeutic Recreation Specialists" to plan an adaptive golf tournament at Torrey Pines "that will hopefully bring people together to help make Torrey Pines and the City of San Diego a more inclusive place for people to play." He noted that he did not foresee the purchase of a ParaGolfer or a similar type of cart "this coming fiscal year," but that the City was exploring grants and potential sponsors to help secure a cart in the near future.

55.     Heartened by Mr. Howard's comments regarding an adaptive golf tournament at Torrey Pines, Plaintiffs responded via email on April 17, 2022 that they would like to assist with planning the tournament to raise money to assist Torrey Pines with becoming fully ADA compliant with its own ParaGolfer. Plaintiffs noted that they had a date in mind for the tournament and were ready to start planning with the City.

56.     Through the exchange of several emails in April 2022, Mr. Howard and Plaintiffs decided on April 22, 2023 on the tournament date. However, after Plaintiffs attempted to confirm details on how the tournament would be hosted and run, it became evident that the City was not prepared to make concrete plans for the tournament and that Mr. Howard's suggestion of the tournament was likely disingenuous. For example, Mr. Howard had originally suggested dates in the fall of 2022 for the tournament, despite confirming that the City would not be able to acquire a ParaGolfer this year.

57.     Plaintiffs emailed Mr. Howard on April 27, 2022 to confirm that they were no longer interested in helping plan the tournament but that they remain committed to ensuring the City has an adaptive golf cart that it is required to have to make its golf program accessible.

58.     Mr. Howard responded by email the next day (April 28, 2022) to say he was sorry to hear Plaintiffs are no longer interested in hosting a tournament at Torrey Pines and to confirm that they were relying on finding grants or sponsors to assist in the acquisition of an accessible adaptive golf cart. He ended his email, "I hope to have good news in the near future and will definitely reach out when our plans are more developed."

59.     Plaintiffs have not received any communication from Mr. Howard, the SD Golf Division, or the City since Mr. Howard's April 28, 2022 email.

60.     Plaintiffs allege continuous and ongoing discrimination. They want to – and plan to – golf at Torrey Pines and enjoy The Grill, and they are frustrated and anxious for Defendants to provide accessible facilities at Torrey Pines and The Grill. Plaintiffs will continue to be injured by being deterred from visiting Torrey Pines and The Grill for all times occurring after the filing of this Complaint to the time of final judgment.

61.     The barriers described above are only those that Plaintiffs encountered. They are presently unaware of other barriers which may in fact exist at Torrey Pines and The Grill and relate to Mr. Nevarez's disabilities. The barriers to access described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access after inspection by Plaintiffs' access consultant(s)/expert(s). These barriers to access render Torrey Pines, The Grill and their related premises inaccessible to and unusable by persons with mobility disabilities.

62.      Plaintiffs' numerous complaints and claims to Defendants and their employees and representatives have been ignored or mishandled. Plaintiffs allege that it would be a futile gesture to provide further notices of violations relating to their continued, attempted visits and deterrence, which are certain to occur on a regular basis following the filing of this Complaint. Therefore, Plaintiffs will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

63.     Defendants knew, or should have known, that these policies, elements, and physical structures were inaccessible, violate state and federal law, and interfere with or deny access to the

physically disabled. Moreover, upon information and belief, Defendants have the financial resources to remove these barriers and implement policy changes without much difficulty or expense and make its golf courses accessible to the physically disabled. To date, however, Defendants refuse to remove these barriers and make such changes.

64.     As a result of Defendants' actions and failures to act, as a result of the failure to provide disabled access, and as a result of their intentional discrimination and deliberate indifference, Plaintiffs have suffered a denial of their civil rights, physical injury, psychological and emotional discomfort, pain and suffering, denial of rights to full and equal access to public facilities, and programmatic access, all to their general, special, and statutory damages. Mr. Nevarez has on the occasion of each such denial of access, encountered barriers to full and equal access which have caused him difficulty, discomfort, and embarrassment. Plaintiffs have been required to seek legal assistance, and seek statutory attorney fees, litigation expenses, and costs, pursuant to federal and state law.

65.     TORT CLAIMS FILED – On or about August 17, 2022, Plaintiffs served claims on the City for all incidents described in this Complaint through August 16, 2022. In a letter dated September 19, 2022, the City rejected Mr. Nevarez's claims. In a letter dated September 30, 2022, the City rejected Ms. Nevarez's claims.

66.     Plaintiffs reserve the right to file additional claims with the City and amend this Complaint accordingly, based on continuing violations at Torrey Pines and The Grill.

67.     Plaintiffs' goal in this suit is a positive one: to make Torrey Pines and The Grill fully accessible to persons with mobility disabilities similar to Mr. Nevarez and their companions.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE ADA, TITLE II**
**[42 USC §§ 12201 *et seq.*]**
**(As to Plaintiffs Abdul Nevarez and Priscilla Nevarez**
**against the City)**

68.     Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

69.     Plaintiff Abdul Nevarez was at all times relevant herein a qualified individual with a disability as defined by the ADA who has reasonable grounds for believing he will be subjected to

discrimination each time that he may attempt to use the subject facilities.

70.    Plaintiff Priscilla Nevarez seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203, based on her association with Mr. Nevarez. She has been discriminated against in her attempts to assist Mr. Nevarez with accessing Torrey Pines and The Grill. In addition, she has herself experienced discrimination as a result of being forced to assist Mr. Nevarez with physical access barriers that limit or deny access to the City's golf programs, services, activities and facilities, including but not limited to architectural and policy barriers that limit access to Torrey Pines and The Grill.

71.    Public entity defendant City has failed to administer its golf program in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

72.    The City has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described herein, including without limitation failing to ensure that Torrey Pines, The Grill, and other golf courses owned, operated, and/or leased by the City are properly accessible to mobility disabled persons; failing to ensure that related public facilities and public accommodations, as described herein, are accessible to mobility disabled persons, including without limitation, abiding by applicable federal access standards for new construction and/or alterations of the subject facilities; failing to remove known architectural barriers at the subject facilities so as to make the facilities "accessible to and useable by" mobility disabled persons; and/or modify its programs, services and activities to make them accessible to mobility disabled persons, including Mr. Nevarez. As a proximate result of the City's actions and omissions, Plaintiffs were discriminated against in violation of Title II of the ADA and of the regulations adopted to implement the ADA. Plaintiffs suffered damages, compensable under Title II for intentional acts of the City, including deliberate indifference, and has suffered physical, mental and emotional damages, including difficulty, discomfort or embarrassment.

73.    On information and belief, to the date of filing this Complaint, Torrey Pines and The Grill continue to be inaccessible for safe and independent use by physically disabled persons such as Mr. Nevarez. Mr. Nevarez is unable, so long as such acts and omissions of the City continue, to achieve equal access to and use of Torrey Pines and The Grill and cannot return to properly use and enjoy Torrey Pines and The Grill until they are made properly accessible to mobility disabled persons. Mr.

Nevarez alleges that he intends to do so, once legally-required access has been provided. The acts of the City have proximately caused and will continue to cause irreparable injury to Plaintiffs if not enjoined by this Court.

74.    Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, Plaintiffs are entitled to the remedies, procedures and rights set forth in Section 505 of the Rehab Act (29 USC § 794a).

WHEREFORE, Plaintiffs request relief as outlined below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF THE ADA, TITLE III**
**[42 USC §§ 12101 *et seq.*]**
**(As to Plaintiffs Abdul Nevarez and Priscilla Nevarez**
**against TP Club, TLTP Partnership, and Evans Hotels)**

75.    Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

76.    Plaintiff Abdul Nevarez was at all times relevant herein a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

77.    Plaintiff Abdul Nevarez has reasonable grounds for believing he will be subjected to discrimination each time that he may attempt to access and use Torrey Pines and The Grill.

78.    Plaintiff Priscilla Nevarez seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203, based on her association with Mr. Nevarez. She has been discriminated against in her attempts to assist Mr. Nevarez with accessing Torrey Pines and The Grill. In addition, she has herself experienced discrimination as a result of being forced to assist Mr. Nevarez with physical and policy access barriers that limit or deny access to Torrey Pines and The Grill, including but not limited to the lack of a safe adaptive golf cart and architectural barriers.

79.    The Grill, Torrey Pines, and all related facilities are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA, including but not limited to "a . . . golf course, or other place of exercise or recreation," (*see* 42 U.S.C. § 12181(7)(L)), and "a restaurant, bar, or other establishment serving food or drink," (*see* 42 U.S.C. § 12181(7)(B)).

80.     The acts and omissions of TP Club, TLTP Partnership, and Evans Hotels set forth herein were in violation of Plaintiffs' rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36, *et seq.*

81.     Plaintiffs allege on information and belief that Torrey Pines and The Grill were designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA. Here, TP Club, TLTP Partnership, and/or Evans Hotels violated the ADA by designing and/or constructing Torrey Pines and The Grill in a manner that did not comply with federal and state disability access standards even though it was practicable to do so.

82.     The removal of each of the barriers complained of by Plaintiffs as herein alleged, were at all times herein mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA. As noted throughout this Complaint, removal of each and every one of the architectural barriers complained of herein was also required under California law.

83.     Plaintiffs allege on information and belief that Torrey Pines and The Grill were modified after January 26, 1993. Any alterations, structural repairs or additions since January 26, 1993 have independently triggered requirements for removal of barriers to access for disabled persons per § 12183 of the ADA.

84.     TP Club, TLTP Partnership, and Evans Hotels have discriminated against Plaintiffs in violation of Title III of the ADA by: (a) providing benefits to Torrey Pines and The Grill that are unequal to that afforded to people without disabilities by precluding people with mobility disabilities from participating in the services of Torrey Pines and The Grill and not providing other accessible features; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of Torrey Pines and The Grill to individuals with disabilities; (c) failing to take steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; (d) failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable; and (e) where TP Club, TLTP Partnership, and Evans Hotels can demonstrate the removal of architectural

barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of Torrey Pines and The Grill available through alternative methods if such methods are readily achievable.

85.     On information and belief, as of the date of Plaintiffs' most recent visits to Torrey Pines and The Grill and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiffs and to other similarly mobility disabled persons and their companions in other respects, which violate Plaintiffs' rights to full and equal access and which discriminate against them on the basis of Mr. Nevarez's disability, thus wrongfully denying to them the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA.

86.     Pursuant to the ADA, 42 U.S.C. 12188 *et seq.*, Plaintiffs are entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as they are being subjected to discrimination based on disability in violation of the ADA or have reasonable grounds for believing that they are about to be subjected to discrimination.

87.     Plaintiffs seek relief pursuant to remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), and pursuant to Federal Regulations adopted to implement the ADA.

WHEREFORE, Plaintiff requests relief as outlined below.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE REHABILITATION ACT OF 1973
### [29 U.S.C. § 794]
### (As to Plaintiff Abdul Nevarez only against the City)

88.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

89.     Upon information and belief, at all times relevant to this action, the City was a recipient of federal funding within the meaning of the Rehab Act. As a recipient of federal funds, the City is required to reasonably accommodate persons with disabilities in their facilities, programs, and activities.

90.     Mr. Nevarez is a qualified individual with a disability as defined in the Rehab Act.

91. By its policies and practices of discriminating against and failing to reasonably accommodate patrons with mobility disabilities, the City violated Section 504 of the Rehab Act.

92. As a result of the City's discrimination and failure to provide reasonable accommodations, Mr. Nevarez and others with disabilities do not have equal access to the activities, programs, and services of the City's golf courses and related amenities for which they are otherwise qualified.

93. Mr. Nevarez's injuries are ongoing so long as the City does not remove barriers, modify its policies and procedures, and provide fully accessible golf course facilities for him and other persons with similar mobility disabilities.

WHEREFORE, Plaintiffs requests relief as outlined below.

## FOURTH CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135
#### (As to Plaintiff Abdul Nevarez only against the City and TP Club)

94. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

95. Upon information and belief, the City, its golf program, and TP Club receive financial assistance from the State of California. Mr. Nevarez is a person with a disability within the meaning of Section 11135.

96. The City, its golf program, and TP Club denied Mr. Nevarez full access to the benefits of its programs, activities, services, and accommodations for which the City and TP Club receives financial assistance from the State of California, and unlawfully subjected Mr. Nevarez and other persons with disabilities to discrimination within the meaning of Section 11135(a) based on their disabilities.

97. Mr. Nevarez's injuries are ongoing so long as the City, its golf program, and TP Club do not remove barriers, modify their policies and procedures, and provide a fully accessible golf course and golf program for Mr. Nevarez and other persons with similar mobility disabilities.

WHEREFORE, Plaintiffs request relief as outlined below.

1

2

3

4

**FIFTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHTS ACT**
**[Cal. Civil Code §§ 51 *et seq.*]**
**(As to Plaintiffs Abdul Nevarez and Priscilla Nevarez**
**against all Defendants)**

5       98.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the

6   allegations contained in all paragraphs of this Complaint and incorporate them herein by reference as if

7   separately repled hereafter.

8       99.     The City, its golf courses, TP Club, TLTP Partnership, and Evans Hotels are business

9   establishments within the meaning of the Unruh Act. Defendants are owners and operators of a

10  business establishment.

11      100.    Defendants violated the Unruh Civil Rights Act by its acts and omissions, as follows:

12          A.      Failure to construct and/or alter Torrey Pines and The Grill in compliance with

13              state building code and state architectural requirements;

14          B.      Failure to remove known barriers to access at Torrey Pines and The Grill;

15          C.      Failure to modify policies and procedures as necessary to ensure Plaintiffs full

16              and equal access to the accommodations, advantages, facilities, privileges, and/or

17              services of Torrey Pines and The Grill; and

18          D.      Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal.

19              Civil Code § 51(f).

20      101.    Plaintiffs have experienced numerous barriers to access at Torrey Pines and The Grill,

21  all of which have caused them major difficulty, discomfort and embarrassment. Plaintiffs suffered

22  physical, mental and emotional damages, including statutory and compensatory damages, according to

23  proof.

24      102.    Further, on information and belief, Torrey Pines, The Grill, and the respective premises

25  are also illegally inaccessible in multiple other respects. As noted above, the barriers to access

26  described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access

27  after inspection by Plaintiffs' access consultant(s)/expert(s).

28

103.     These barriers to access render Torrey Pines, The Grill, and the respective premises inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. Plaintiffs pray leave to amend this Complaint, if necessary, to obtain full injunctive relief as to those barriers that limit or deny full and equal access to persons with similar mobility disabilities.

104.     Each violation of the ADA constitutes a separate and distinct violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 52(a).

105.     With respect to the City's violations of the Unruh Act that are not predicated on violations of the ADA, the City's behavior was intentional: it was aware of and/or was made aware of its duties to remove barriers that prevent persons with mobility disabilities like Mr. Nevarez's from obtaining full and equal access to Torrey Pines and The Grill. The City's discriminatory practices and/or policies that deny full enjoyment of Torrey Pines and The Grill to persons with physical disabilities indicates actual and implied malice and conscious disregard for the rights of Mr. Nevarez and other similarly disabled individuals. Plaintiffs complained on several occasions to the City and its representatives, to no avail. Accordingly, the City has engaged in willful affirmative misconduct in violating the Unruh Act.

106.     On information and belief, the access features of Torrey Pines and The Grill have not been improved since Plaintiffs' most recent visit there. Plaintiffs' injuries are ongoing so long as the Defendants do not modify their policies and procedures and provide fully-accessible facilities for Plaintiffs and other persons with mobility disabilities similar to Mr. Nevarez's.

107.     At all times herein mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that its barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiffs and upon other persons with mobility disabilities similar to Mr. Nevarez, but Defendants failed to rectify the violations, and presently continue a course of conduct in maintaining barriers that discriminate against Mr. Nevarez, similarly-situated disabled persons, and their companions.

WHEREFORE, Plaintiffs request relief as outlined below.

**PRAYER FOR RELIEF**

1. Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

2. Plaintiffs request a declaratory judgment that the Defendants' actions, omissions, and failures -- including but limited to: failing to remove known architectural barriers at Torrey Pines and The Grill so as to make the facilities "accessible to and useable by" mobility disabled persons; failing to construct and/or alter Torrey Pines and The Grill (including parking and pedestrian paths of travel to/from parking) in compliance with federal access standards, state building code, and state architectural requirements; and failing to make reasonable modifications in policy and practice for Plaintiffs and other persons with similar mobility disabilities and their companions.

3. Plaintiffs request that the Court issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To provide reasonable accommodation for persons with disabilities in all its programs, services and activities at Torrey Pines and The Grill;

    c. To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at Torrey Pines and The Grill;

    d. To modify the above-described facilities to provide full and equal access to persons with mobility disabilities;

    e. To remove all architectural barriers at Torrey Pines and The Grill;

    f. To maintain such accessible facilities once they are provided;

g. To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons at Torrey Pines and The Grill;

h. To implement nondiscriminating protocols, policies, and practices for accommodating persons with mobility disabilities at Torrey Pines and The Grill.

4.      Plaintiffs request that the Court retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

5.      Plaintiffs request all appropriate damages, including but not limited to statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6.      Plaintiffs request all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including but not limited to the ADA, the Unruh Act, and "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure § 1021.5.

7.      Plaintiffs request prejudgment interest pursuant to California Civil Code § 3291;

8.      Plaintiffs request interest on monetary awards as permitted by law; and

9.      Plaintiffs request such other and further relief as this Court may deem just and proper.

Dated: March 16, 2023            PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

                                 */s/ Catherine Cabalo*
                                 BY: Catherine Cabalo
                                 Attorneys for Plaintiffs
                                 Abdul Nevarez and Priscilla Nevarez

### DEMAND FOR JURY

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.

Dated: March 16, 2023            PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

                                 */s/ Catherine Cabalo*
                                 BY: Catherine Cabalo
                                 Attorneys for Plaintiffs
                                 Abdul Nevarez and Priscilla Nevarez